IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GEOTAG IP, LLC,<br>    **Plaintiff** | )<br>)<br>) |
| v. | ) Civil Action 2:22-cv-00023<br>)<br>) |
| **AMS SENSORS USA, INC.**<br>    Defendant. | )<br>) JURY TRIAL DEMANDED<br>) |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Geotag IP, LLC ("Geotag") files this Original Complaint and demand for jury trial seeking relief from patent infringement of the claims of U.S. Patent No. 9,511,910 ("the '910 patent") (referred to as the "Patent-in-Suit") by ams Semsors USA, Inc. ("ams Sensors").

**I.    THE PARTIES**

1.  Plaintiff Geotag is a Texas Limited Liability Company with its principal place of business located in Travis County, Texas.

2.  On information and belief, Ams Sensors is a corporation existing under the laws of Austria, with a principal place of business located at 5556 Tennyson Parkway, Plano, TX, 75024. On information and belief, ams Sensors sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this

judicial district. Ams Sensors may be served through their registered agent Timothy J Mendolia, 2017 E. Lamar Blvd., Suite 200, Arlington, TX 76006.

## II.     JURISDICTION AND VENUE

3. This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271, et. seq.

4. This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Texas and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Texas and in this judicial district.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). Defendant has committed acts of infringement and has a regular and established place of business in this District.  Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Texas and this District.

## III.    INFRINGEMENT

**A.     Infringement of the '910 Patent**

6. On December 6, 2016, U.S. Patent No. 9,511,910 ("the '910 patent", attached as Exhibit A) entitled "Intelligent Wine Capsule" was duly and legally issued by the U.S. Patent and Trademark Office. Geotag owns the '910 patent by assignment.

7. The '910 patent relates to a datalogger that includes energy harvesting and use.

8. Ams Sensors makes, uses, and sells dataloggers including energy harvesting and use that infringes one or more claims of the '910 patent, including independent claim 20, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '910 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service. Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

9. Support for the allegations of infringement may be found in the following preliminary table:

| **US 9511910 B2 Claim 20** | **Ams Sensors's Wireless Sensor Tags & Interfaces** |
|---|---|
| 20. A method comprising: | PRODUCTS / WIRELESS SENSOR     WIRELESS SENSOR<br><br>**Wireless Sensor Tags & Interfaces**<br><br>**ams**     **OSRAM**<br><br>Sensing is Life<br><br>Our vision is to create the uncontested leader in optical solutions through bold investments in disruptive innovation and continuous transformation delivering best-in-class profitability and growth.<br><br>© 2021 ams AG. All rights reserved.<br><<https://ams.com/wireless-sensor-tags-interfaces>><br><br>ams's Wireless Sensor Tags & Interfaces has a method.<br><br>The reference includes subject matter disclosed by the Claim 20s of the patent after the priority date. |

| US9511910 B2 Claim 20 | ams's Wireless Sensor Tags & Interfaces |
|---|---|
| receiving electromagnetic energy at an energy harvester to form harvested electromagnetic energy; transferring the harvested electromagnetic energy to at least one energy storage component to form stored energy; | NFC and UHF RFID sensor tags offer a highly integrated solution for remote sensor data logging. The tags conform to the specifications of the NFC/ISO15693 as well as the UHF RFID standards. Featuring on-chip temperature sensing and the exclusive cool-Log™ technology, these sensor tags enable innovative and cost-sensitive solutions in food and pharmaceutical cold-chain management, industrial process control, remote monitoring and healthcare applications. NFiC™ ICs from ams lower the barriers to NFC integration in electronic devices thanks to their small footprint, high data rate, flexible data transfer modes, fully passive NFC tag emulation and advanced energy harvesting. NFC/HF interface tags are best suited to demanding consumer and industrial applications such as zero-power device configuration and set-up, feature-rich contactless cards for payment and authentication, smart toys and connected cars. <https://ams.com/wireless-sensor-tags-interfaces> The reference describes receiving electromagnetic energy at an energy harvester to form harvested electromagnetic energy. The reference describes transferring the harvested electromagnetic energy to at least one energy storage component to form stored energy. |

| US9511910 B2 Claim 20 | ams's Wireless Sensor Tags & Interfaces |
|---|---|
| after a voltage of the stored energy exceeds a pre-defined threshold, turning ON at least one processor and at least one non-volatile memory, wherein the at least one processor and the at least one non-volatile memory are powered by the stored energy; | Once the chip powers up, either from the battery or the RF field, and the power is stable, the initialization process begins. At this point, the controller logic will read specific EEPROM addresses and load them into "shadow" registers. During this phase the battery type will be determined by checking System parameter BTYPE available in the EEPROM field. <https://ams.com/documents/20143/36005/AS39513_DS000576_2-00.pdf/bbe4317b-9316-4c82-5058-b33158e8d696> The reference describes after a voltage of the stored energy exceeds a pre-defined threshold, turning ON at least one processor and at least one non-volatile memory, wherein the at least one processor and the at least one non-volatile memory are powered by the stored energy. |

| US9511910 B2 Claim 20 | ams's Wireless Sensor Tags & Interfaces |
|---|---|
| while the at least one processor and the at least one non-volatile memory are activated: receiving a temperature signal at the at least one processor from a temperature sensor; | NFC and UHF RFID sensor tags offer a highly integrated solution for remote sensor data logging. The tags conform to the specifications of the NFC/ISO15693 as well as the UHF RFID standards. Featuring on-chip temperature sensing and the exclusive cool-Log™ technology, these sensor tags enable innovative and cost-sensitive solutions in food and pharmaceutical cold-chain management, industrial process control, remote monitoring and healthcare applications.<br>NFiC™ ICs from ams lower the barriers to NFC integration in electronic devices thanks to their small footprint, high data rate, flexible data transfer modes, fully passive NFC tag emulation and advanced energy harvesting. NFC/HF interface tags are best suited to demanding consumer and industrial applications such as zero-power device configuration and set-up, feature-rich contactless cards for payment and authentication, smart toys and connected cars.<br><https://ams.com/wireless-sensor-tags-interfaces><br>The reference describes while the at least one processor and the at least one non-volatile memory are activated: receiving a temperature signal at the at least one processor from a temperature sensor. |

| US9511910 B2 Claim 20 | ams's Wireless Sensor Tags & Interfaces |
|---|---|
| storing data representative of the temperature signal in the at least one non-volatile memory; and<br><br>discharging the stored energy such that the voltage of the stored energy drops below the pre-defined threshold; and<br><br>turning OFF the at least one processor and the at least one non-volatile memory after the data representative of the temperature signal has been stored in the at least one non-volatile memory. | **Energy Harvesting**<br><br>AS39513 has harvesting capability. The regulated voltage output pin for energy harvesting is VEXT. If an RFID reader is present, the harvested reader power is then available externally through the VEXT pin. An internal regulator limits the voltage to $V_{EXT}$. The output impedance $R_{VEXT}$ of this voltage source is fixed.<br><br><https://ams.com/documents/20143/36005/AS39513_DS000576_2-00.pdf/bbe4317b-9316-4c82-5058-b33158e8d696><br><br>The reference describes storing data representative of the temperature signal in the at least one non-volatile memory.<br><br>The reference describes discharging the stored energy such that the voltage of the stored energy drops below the pre-defined threshold.<br><br>The reference describes turning OFF the at least one processor and the at least one non-volatile memory after the data representative of the temperature signal has been stored in the at least one non-volatile memory. |

These allegations of infringement are preliminary and are therefore subject to change.

10. Ams Sensors has and continues to induce infringement. Ams Sensors has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., wireless temperature sensors) such as to cause infringement of one or more of claims 1–27 of the '910 patent, literally or under the doctrine of equivalents. Moreover, Ams Sensors has known or should have known of the '910 patent and the technology underlying it from at least the date of the filing of the lawsuit.

11. Ams Sensors has and continues to contributorily infringe. Ams Sensors has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies),

and continues to do so, on how to use its products and services (e.g., wireless temperature sensors) and related services such as to cause infringement of one or more of claims 1–27 of the '910 patent, literally or under the doctrine of equivalents.  Moreover, ams Sensors has known or should have known of the '910 patent and the technology underlying it from at least the date of the filing of the lawsuit.

12. Ams Sensors has caused and will continue to cause Geotag damage by direct and indirect infringement of (including inducing infringement of) the claims of the '910 patent.

### IV.     JURY DEMAND

Geotag hereby requests a trial by jury on issues so triable by right.

### V.     PRAYER FOR RELIEF

WHEREFORE, Geotag prays for relief as follows:

a. enter judgment that Defendant has infringed the claims of the '910 patent through Ams Sensors payment links;

b. award Geotag damages in an amount sufficient to compensate it for Defendant's infringement of the '910 patent in an amount no less than a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c. award Geotag an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d. declare this case to be "exceptional" under 35 U.S.C. § 285 and award Geotag its attorneys' fees, expenses, and costs incurred in this action;

e.     declare Defendant's infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f.     a decree addressing future infringement that either (i) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

g.     award Geotag such other and further relief as this Court deems just and proper.

Respectfully submitted,

**Ramey & Schwaller, LLP**

/s/William P. Ramey, III
William P. Ramey, III
Texas State Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

Jeffrey E. Kubiak
Texas State Bar No. 24028470
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
jkubiak@rameyfirm.com

***Attorneys for Geotag IP, LLC***